| United States District Court | Southern District of Texas |
|---|---|

Clifford Allen Smith, §
TDCJ 576142, §
§
        Plaintiff, §
§
versus                                 §       Civil Action H-10-3308
§
Garland R. Goodrum, *et al.*, §
§
        Defendants. §

## Opinion on Dismissal

    Clifford Allen Smith sues Texas prison employees Garland Goodrum, Lt. Robert Quada, Warden Pittman, Lonnie Douglas, Officer Glaze, S. Vaughn, Cynthia Gurrola, Asst. Warden Thomas Pierce, Unknown Grievance Investigators, Linda Richey, Assistant Warden Tony O'Hare, Warden J. Smith, Major Watson, Lt. Rodriguez, T. Tomkavits, unknown Substitute Investigator, Captain Baggett, Mailroom Representative Scott, Delia Busby, and Cathy Steinbach for civil rights violations. Smith raises retaliation claims. The defendants move for summary judgment.

1. *Claims*

    On July 27, 2009, Smith wrote a letter to his mother voicing his opinion about two prison officials, Quada and Pittman. Goodrum read the letter and gave it to Quada, who contacted Pittman. Goodrum did this in retaliation against Smith for past grievances. Quada retaliated against Smith by having Pittman interview Smith. Pittman told Smith there would be punitive action for what he said in the letter and that he would turn the matter over to one of his lieutenants.

    Douglas called Smith to the Lieutenant's office. The Lieutenant told Smith he would face disciplinary charges for using indecent or vulgar language in a letter. Smith responded that the letter was sent to a family member and was protected speech. Glaze asked Smith for a statement about the offense report. Smith told her that what he said in the letter was protected speech and did not violate prison disciplinary rules. The report was turned over to

the disciplinary office. Smith was later notified about the disciplinary report. Vaughan retaliated against Smith by grading the disciplinary report as a minor charge and allowing it to go forward, though Smith did not violate any disciplinary rules.

On July 31, 2009, Gurrola held disciplinary court. She found Smith guilty and put him on commissary and cell restrictions, gave him a verbal reprimand, and stopped his contact visitation. Smith appealed the disciplinary conviction by filing a grievance. Pierce knew that Goodrum had retaliated against Smith. Quada refused to investigate Smith's grievance. The Step 2 grievance was denied. O'Hare and Richey denied Smith's appeal of his disciplinary case in retaliation for having written the letter to his mother. Smith admits what he stated in the letter may have been unflattering and unwelcome. He contends, however, it did not violate any prison disciplinary rules. He argues he was punished for exercising his freedom of speech, which is retaliation. Pierce retaliated against Smith by allowing the law library staff to inspect his outgoing mail. This was in retaliation for Smith using the prison grievance process.

On October 19, 2009, Quada retaliated against Smith for writing another letter using vulgar language. On the same day, Rodriguez investigated the offense report written by Quada. The next day, Watson upgraded the disciplinary case to a major case, in retaliation against Smith. On October 20, 2009, Kavits gave Smith notice of a second disciplinary case, number 2010-0050192, in retaliation against Smith.

Captain Baggett convened the disciplinary hearing and Smith pled not guilty. The charging officer was called and Smith was allowed to ask questions. However, Captain Baggett denied Smith's questions pertaining to this incident which would show that there had been no violation of the disciplinary rules. Smith told everyone present that this issue would be going to court. Baggett found Smith guilty of the disciplinary charge. This was retaliation because he was punished for behavior that did not violate the disciplinary rules and that was an exercise of his constitutional rights.

On October 27, 2009, Scott told Smith of the denial of the second letter to his mother. This denial was because Smith again violated correspondence rules by using racial slurs. Smith contends this refusal to mail his letter was in retaliation for his exercise of his right to free speech. He also contends this notice of the mail denial was four days late in violation of prison rules.

2

On November 17, 2009, the Director's Review Committee notified Smith that it was upholding the unit's decision not to mail his letter. The DRC said the letter advocated the circumventing of TDCJ rules. Smith maintains he did not advocate violating any rules when he voiced his opinion about unit officials in letters to a family member regardless of how unflattering or unwelcome his opinions were. The DRC was helping other TDCJ employees retaliate against Smith and trying to cover up the retaliation against Smith.

2. *Retaliation*

Prison officials may not retaliate against an inmate because he exercised a First Amendment right. *Woods v. Smith*, 60 F.3d 1161, 1164 (5th Cir.1995). To prevail on a retaliation claim, a prisoner must show (1) a specific constitutional right, (2) the defendant's intent to retaliate against the prisoner for his exercise of that right, (3) a retaliatory adverse act, and (4) causation. *McDonald v. Steward*, 132 F.3d 225, 231 (5th Cir. 1998).

A. *Specific Constitutional Right*

Defendants argue that Smith has not raised a deprivation under the First Amendment. *Tighe v. Wall*, 100 F.3d 41, 43 (5th Cir. 1996) (prisoner must show a violation of a specific constitutional right under the first element of a retaliation claim). Smith was punished by prison officials for writing and sending letters to his mother in violation of rule 42 of the prison's Disciplinary Rules and Procedures for Offenders. The rule prohibits the "Use of indecent or vulgar language or gestures in the presence of or directed at an employee or any person who is not an offender."

In his first letter to his mother, Smith wrote "having problems with that dick eating bitch law library supervisor, he's not only a whore, but his [*sic*] in fact a stupid whore. Call our nigger warden concerning him obstructing justice and interfering with my ability to comply with the rules of civil produce [*sic*]. P.S. Nigger Warden's last name is Pittman." Complaint, exhibit, p. 5 (1-1, 5). In his other letter to his mother, he wrote "our porch monkey slave master needs to be phoned." *Id.*, p. 14.

The defendants argue that their interest in rehabilitating prisoners justifies the disciplinary sanctions for using vulgar and indecent language in outgoing mail, citing *Morgan v. Quarterman*, 570 F.3d 663, 666-67 (5th Cir. 2009). In *Morgan*, the Fifth Circuit upheld a prison disciplinary conviction where the prisoner sent a note to an Assistant Texas Attorney

3

General stating: "Dear Susan, Please use this to wipe your ass, that argument was a bunch of shit." *Id.* The defendants acknowledge that Smith wrote his letters to his mother rather than a public official, but contend that the same interest in rehabilitating prisoners applies here.

In an earlier case, the Fifth Circuit held officials violated a prisoner's rights when they refused to mail a letter from the prisoner to his girlfriend. *McNamara v. Moody*, 606 F.2d 621, 625 (5th Cir. 1979). The prisoner wrote that the mail officer, while reading mail, engaged in masturbation and "had sex" with a cat. The Court said prison officials could not justify their conduct on the ground that such letters could result in a breakdown in prison security and discipline, or that the letter was obscene.

Under *McNamara*, Smith may have a First Amendment right to use vulgar language in outgoing mail sent to a family member. The record, however, does not show issues of material fact on the motivation and causation elements of his retaliation claim.

B. *Intent to Retaliate*

Assuming Smith has a First Amendment right to use vulgar language in outgoing mail, he still must show the remaining elements of a retaliation claim. The second part of a retaliation claim is a retaliatory motive by the defendants. Smith must state facts showing evidence of motivation or "allege a chronology of events from which retaliation may plausibly be inferred." *Woods*, 60 F.3d at 1164. That one event follows another does not amount to proof of retaliation. *Enlow v. Tishomingo County, Mississippi*, 45 F.2d 885, 889 (5th Cir. 1995).

None of Smith's allegations controvert the showings that he tried to mail out the letters, that they contained vulgar or racist language directed at employees, that the defendants believed the letters violated the disciplinary rules, and that the letters ostensibly violated prison rules. Smith raises no facts which show that any of the defendants were motivated by retaliation. He raises no facts which contradict the defendants' showing that they were simply punishing Smith for what they determined to be violations of disciplinary rule 42. A plaintiff must present facts showing a retaliatory motive or the alleged conduct must itself raise an inference of retaliation. *Whittington v. Lynaugh*, 842 F.2d 818, 819 (5th Cir.1988). Smith's allegations do not raise a chronology of events showing an intent to retaliate.

4

### C. *Causation*

The causation element of a retaliation claim requires a showing that "but for the retaliatory motive the complained of incident ... would not have occurred." *Johnson v. Rodriguez*, 110 F.3d 299, 310 (5th Cir.1997). "Claims of retaliation must ... be regarded with skepticism, lest federal courts embroil themselves in every disciplinary act that occurs in state penal institutions." *Woods*, 60 F.3d at 1166. Smith's allegations do not show that, absent retaliation, the defendants would not have filed and pursued the two disciplinary charges. The Fifth Circuit has said: "the prospect of endless claims of retaliation on the part of inmates would disrupt prison officials in the discharge of their most basic duties." *Id.* Smith does not allege any facts which show but-for causation. *Johnson*, 110 F.3d at 310.

The record does not raise a fact issue material to Smith's retaliation claims on two elements: (1) the defendants' intent to retaliate against Smith for exercising his First Amendment rights and (2) causation.

### 3. *Qualified Immunity*

The defendants raise qualified immunity. To defeat qualified immunity, a plaintiff must show that: (1) he has asserted a violation of a constitutional right; (2) this right was clearly established at the time of the official's actions; and (3) the official's actions were objectively unreasonable. *Eugene v. Alief Indep. Sch. Dist.*, 65 F.3d 1299, 1305 (5th Cir.1995). Smith has asserted a violation of a constitutional right that was clearly established at the time of the official's actions. The remaining issue is whether the defendants' actions were objectively unreasonable. *Thompson v. Upshur County, Tex.*, 245 F.3d 447, 457 (5th Cir. 2001).

The summary judgment record shows that the defendants prosecuted Smith under the prison's disciplinary rules and that the letters violated the rules. The record does not raise a fact issue that any of the defendants knew that their behavior was in violation of the First Amendment. *Price v. Roark*, 256 F.3d 364, 369 (5th Cir. 2001) (*citing Saucier v. Katz*, 533 U.S. 194 (2001)) ("if an officer makes a reasonable mistake as to what the law requires, the officer is entitled to immunity"). The record does not show that any defendants were plainly incompetent or knowingly violated the Constitution. *See Malley v. Briggs*, 475 U.S. 335, 341 (1986). The defendants are entitled to qualified immunity. *See Harlow v. Fitzgerald*, 457 U.S.

800, 818 (1982).

*4. Conclusion*

Smith contends the defendants have not provided appropriate discovery. A responding party "must show how the additional discovery will defeat the summary judgment motion." *King v. Dogan*, 31 F.3d 344, 346 (5th Cir. 1994). Smith's contentions on discovery are not enough to prevent this Court from granting summary judgment.

Smith fails to raise facts material to his retaliation claims on two elements of his claim, the defendants' intent to retaliate for asserting a First Amendment right and causation. Smith also fails to raise facts material to qualified immunity. The defendants' motion for summary judgment (64) is granted.

Signed January 14, 2013, at Houston, Texas.

Lynn N. Hughes
United States District Judge